In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00268-CV
_____

IN THE INTEREST OF T.L.M., A.M.M., M.N.M., AND C.N.M.

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CV1712740

MEMORANDUM OPINION

This appeal arises from a judgment terminating Mother's and Father's parent-child relationships with four of their children. The four children discussed in the appeal and whose parents had their rights terminated are *Jay*, *Sophie*, *Paige*, and *Liam*.[1] While they share the same mother, that is not true of their respective fathers.

---

[1] To protect the identity of the minor children identified in the trial court's judgment, we use pseudonyms. *See* Tex. R. App. P. 9.8(a), (b). We follow the same convention for the names of their parents and the members of their respective families. We note that *Paige* and *Liam* are *Father's* children, while *Jay* and *Sophie* are not. The respective fathers of *Jay* and *Sophie* also had their rights terminated, but they did not file notices of appeal.

1

The attorney representing *Mother* in her appeal filed a brief asserting no arguable grounds support Mother's appeal.[2] We agree, as no arguable issues are available to Mother to support an issue claiming the trial court's judgment should be reversed. *Father*, on the other hand, filed a brief in which he raises issues challenging the merits of the trial court's rulings terminating his rights to Paige and Liam. In Father's brief, Father raises five issues that argue the evidence does not support the trial court's rulings.[3] We conclude Father's issues have no merit, so we affirm.

Background

In December 2017, the Texas Department of Family and Protective Services sued Mother and three men it alleged were the parents of the four children that are the subject of the appeal. When the Department sued, Jay was eight, Sophie was nearly four, Paige was two, and Liam was eleven-months old. In response to the suit, the trial court signed an emergency temporary order, which authorized the Department to remove the four children from Mother's care. The Department

---

[2] *See Anders v. California*, 386 U.S. 738 (1967); *see also In re L.D.T.*, 161 S.W.3d 728, 731 (Tex. App.—Beaumont 2005, no pet.) (holding that *Anders* procedures apply in parental-rights termination cases).

[3] The judgment the trial court signed relies on several grounds in the Family Code that, when proven, authorize a Texas court to terminate a parent's rights to his or her children. *See* Tex. Fam. Code Ann. § 161.001(b)(1) (D), (E), (F), (b)(2) (Supp.).

identified the men who it claimed were the fathers of the four children named in the suit. The Department's petition includes a claim to terminate the rights of the parents of the four children identified in the suit.

To simplify the discussion, we provide the background in the case using the lens required under the applicable standards of review that apply to Father's issues.[4] In general, as a reviewing court, we defer to the trial court's role in reaching its findings if the evidence in the trial allowed the court to form a firm belief or conviction that the matter the Department was asking that it find was true.[5] Here, the record shows that Mother and Father never married. They lived together for only a brief period after Paige and Liam were born.

The testimony the trial court heard allowed the trial court to conclude that Father knew Mother had problems with drugs and alcohol even before Paige and Liam were born. When Father testified, he admitted he had seen Mother under the influence of drugs. And he stated she drank beverages containing alcohol when she was high. He acknowledged that Mother's drug and alcohol abuse affected Mother's

---

[4] *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (applying a deferential standard of review to factual sufficiency issues raised in the appeal); *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (applying a light most favorable to the finding standard when the issue raised in the appeal presents a legal sufficiency challenge).

[5] *See In re J.O.A.*, 283 S.W.3d at 345; *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

ability to parent, as he stated he did not think Mother should be allowed to keep the children when she used drugs. Father explained that Mother's drug use had "always been our issue." But he never described any efforts he made to protect Paige or Liam from her. Instead, he left the home, leaving the two children in her care after living with them for just seven or eight days after they were born. And Father agreed he had not yet formed strong bonds with Paige or Liam.

Father also addressed his own drug use when he testified. He admitted he and Mother used methamphetamine before Paige and Liam were born. But the record contains conflicting testimony about whether Father's illegal drug use continued after the children were born. For instance, Mother and mother's father (Grandfather), testified they had seen Father around the children when he was high. And Mother testified Father continued to use illegal drugs after Paige and Liam were born. Mother also suggested that Father sold drugs, stating he did so "when [she] asked him to." Nonetheless, Father points to his testimony denying he used illegal drugs after Paige and Liam were born.

The testimony reflects that Mother's drug and alcohol use concerned others too. In September 2017, someone notified the Department that Mother was not supervising her four children properly. The Department acted on information, which claimed that Mother's neglect was due to her abuse of alcohol and drugs. Paige and

Liam were living with Mother at that time, but the evidence does not show whether Father was living with them then.

The Department accomplished little between September and November, but it became more active when it learned that the police came to Mother's home in November 2017 due to an incident involving family violence. During the trial, one of the Department's caseworkers blamed the delays that occurred in her investigation in September and October 2017 on Mother, claiming that after opening her file, Mother never got "in touch with her." But when the Department received the report in November alleging that Father had assaulted Mother while the children were allegedly present, the Department learned Father had been arrested as a result of the incident reported to the police.[6]

Father downplayed the incident that led to his arrest on the family violence claim, noting that it had later been dismissed by the police. Yet Father also admitted in the trial that he had used a baseball bat to break a window in Mother's car while she was leaving the home after they argued there. But he claimed the children were not present when the incident occurred, explaining they were inside the home. Father

---

[6] Mother testified during the trial that the charges against Father on the charge of domestic violence were later dismissed.

offered excuses for his conduct, explaining he broke the car's window to remove some things from it because he thought Mother was stealing them.

When Mother testified, no one ever asked her to explain where the children were when the incident involving the baseball bat occurred. She also downplayed the incident, claiming she had not been injured. Nonetheless, Mother testified there was another incident where Father engaged in violent conduct directed at her. She explained Father hit her once before, and that altercation also resulted in the police coming to their home.

Mother also addressed Father's use of drugs in the trial. According to Mother, she had seen Father "smoke weed." Father also told her he used meth. Mother explained she last saw Father using illegal drugs in 2018. Mother also addressed her drug and alcohol use. Mother admitted using methamphetamine in the past and drinking beverages that contained alcohol. Mother denied ever using drugs in front of her children, but she admitted that, on at least two occasions, she was intoxicated in their presence. Mother agreed she used methamphetamine at least once after the Department removed the children from her home. And she agreed she failed to complete a drug rehabilitation program even though she had enrolled in one. Mother agreed she had refused to take drug tests in the months before the trial. She explained that she discontinued the tests because the Department said her case was nearly

6

finished. A week before the last day of the trial, the police arrested Mother for allegedly manufacturing and delivering methamphetamine. Mother pleaded guilty to the offense. The court handling that case placed Mother on deferred adjudication for seven years.

The evidence admitted in the trial shows that Father has two convictions for crimes that were state-jail felonies. Father's most recent conviction, which occurred three weeks before the trial, resulted from a charge alleging Father possessed methamphetamine in 2015. In the possession case, the trial court assessed a 600-day sentence.[7] Father's other conviction was for a burglary, which he committed in 1998. On the burglary conviction, Father served a two-year sentence.

The parties chose to try the Department's claims to the bench. When the trial ended, the trial court terminated Mother's rights to Jay, Sophie, Paige, and Liam. It also terminated Father's rights to Paige and Liam.[8] The court signed a judgment, which carried out the court's findings, and terminated Mother's rights based on

---

[7] The judgment punishes Father's 2019 conviction as a state-jail felony. *See* Tex. Health & Safety Code Ann. § 481.115(b).

[8] The judgment also terminated the rights of the other two men who the trial court found to be the father of each of Mother's two older children. But because they did not appeal, we mention them only as needed to explain why the trial court had the discretion to render a judgment terminating Mother's and Father's rights to the two younger children that belonged to them.

violations the court found under subsections D, E, N, O, and P of the Texas Family Code.[9] The court terminated Father's rights based on its findings that Father violated subsections D, E, and F of that same code.[10] Finally, the judgment contains best-interest findings, which were also necessary to terminate Father's and Mother's rights.[11]

Mother and Father then filed their respective notices of appeal. On appeal, Mother filed an *Anders* brief.[12] But Father filed a brief raising several issues, and they assert the evidence does not support the court's findings terminating Father's rights. Father also challenges the trial court's best-interest findings.

Analysis

I. Mother's Appeal

Under *Anders*, we are required to independently review *Anders* briefs to determine whether they comply with the requirements that apply to such briefs.[13] The brief Mother's attorney filed complies with the requirements. It presents an

---

[9] *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (F), (N), (O), (P) (Supp.).

[10] *Id*. § 161.001(b)(1)(D), (E), (F).

[11] *See id*. § 161.001(b)(2).

[12] *See In re L.D.T.*, 161 S.W.3d at 731.

[13] *See Anders,* 386 U.S. at 744; *In re L.D.T.*, 161 S.W.3d at 731.

8

attorney's professional evaluation of the record and explains why no arguable grounds exist to support Mother's appeal.[14] Mother's attorney also represented that she sent Mother a copy of the brief, notified Mother of her right to file a *pro se* response, and explained how Mother could arrange to review the record in her appeal.

In response to the notice, Mother filed a document in which she asks this Court to give her another chance to maintain her rights to her children. But Mother's response does not assert the trial court committed any specific errors terminating her rights. Instead, Mother requests that this Court vacate the trial court's judgment and require her to follow another program, which she outlines, that would allow the children to be returned to her if she completed the program.[15]

After reviewing the record, counsel's brief, and Mother's response, we conclude no arguable grounds exist to support Mother's appeal. We also conclude

---

[14] *See In re D.D.*, 279 S.W.3d 849, 850 (Tex. App.—Dallas 2009, pet. denied).

[15] Of course, we aren't authorized to reverse a case without an error being assigned by an appellant to the trial court's ruling. Even so, we note that while Mother's proposal includes a requirement for monthly drug testing, nothing in her program requires her to complete a program designed to give her the skills she will need to free herself from abusing drugs.

that Mother's appeal is frivolous.[16] Therefore, we affirm the trial court's judgment terminating Mother's parent-child relationships with Jay, Sophie, Paige, and Liam.

## II. Father's Appeal

In issues one through three, Father argues the evidence admitted in the trial is insufficient to support the trial court's rulings terminating his rights to Paige and Liam. In issues four and five, Father argues that the evidence does not show that terminating his rights is in Paige's and Liam's best interest.

### A. Standard of review

First, we note the standards that apply to our review of an appellant's legal and factual sufficiency issues in a case involving the termination of a parent's rights. To involuntarily terminate a parent's rights to his children, the factfinder must conclude by clear and convincing evidence (1) that the parent committed one or more of the prohibited acts or omissions listed in section 161.001(b)(1) of the Family Code, and (2) that terminating the parent's rights is in the child's best interest.[17] In most cases, if the evidence supports the trial court's best-interest finding, the judgment will be affirmed even if the evidence supports just one of the many

---

[16] *See Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991); *see also In re K.R.C.*, 346 S.W.3d 618, 619 (Tex. App.—El Paso 2009, no pet.); *In re D.D.*, 279 S.W.3d at 850.

[17] *See id.* § 161.001(b)(1), (b)(2) (Supp.).

subsections in section 161.001(b)(1) that authorizes a trial court, on the required grounds, to terminate a parent's rights.[18] But when the judgment rests in whole or in part on subsection D or subsection E, fundamental fairness requires the appellate court to reach a parent's issues that raise challenges to either the D or E grounds for terminating a parent's rights.[19]

In part, Father's brief argues that the evidence is not legally sufficient to support the trial court's rulings. In a legal sufficiency review, the appellate court must consider the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true."[20] In doing so, we assume that the factfinder resolved disputed facts in a manner favoring the trial court's finding, if a reasonable factfinder could have made that finding that is being challenged in the appeal.[21] Thus, under a legal sufficiency review, we disregard all evidence a reasonable factfinder could have, by inference, disbelieved or found incredible.[22] And if the appellate court concludes

---

[18] *See In re S.M.R.*, 434 S.W.3d 576, 580 (Tex. 2014).

[19] *See In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019).

[20] *In re J.L.*, 163 S.W.3d at 85.

[21] *In re J.F.C.*, 96 S.W.3d at 266.

[22] *Id.*

that a reasonable factfinder could form a firm belief or conviction that the matter that the Department was relying on to terminate the parent's rights was true, we are obligated to hold that evidence is legally sufficient to support the finding the parent is complaining about on appeal.[23]

Father also argues the evidence is not factually sufficient to support the verdict. Under factual sufficiency review, we consider and weigh all the evidence, deferring to the findings the factfinder made to avoid supplanting the factfinder's verdict with one of our own.[24] "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient."[25] Under a factual sufficiency standard, the appellate court gives due deference to the factfinder's findings and must avoid substituting its own judgment for the factfinder's.[26]

---

[23] *See In re J.L.*, 163 S.W.3d at 85.

[24] *In re J.O.A.*, 283 S.W.3d at 345; *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

[25] *In re J.O.A.*, 283 S.W.3d at 345 (cleaned up).

[26] *See In re H.R.M.*, 209 S.W.3d at 108.

B. Analysis—Statutory Findings

For convenience, we address Father's second issue challenging the trial court's subsection E finding before we address his other issues. According to Father, the record from the trial contains insufficient evidence to support the trial court's subsection E finding.

Under subsection E, the Department had the burden to prove by clear and convincing evidence that (1) Father engaged in conduct that endangered Paige's and Liam's physical or emotional well-being, *or* (2) that Father placed Paige and Liam with a person or persons who engaged in conduct that endangered their physical *or* emotional well-being.[27] Thus, while subsection E focuses on the parent's conduct, it allows the trial court to include the parent's knowledge about the conduct of others when that person's conduct endangered the child.

In deciding if factually sufficient evidence supports the trial court's subsection E finding in this case, we focus on whether the evidence established Father endangered Paige's and Liam's well-being as a "direct result of [his] conduct, including acts, omissions, or failures to act."[28] As the factfinder, the trial court had

---

[27] *See* Tex. Fam. Code Ann. § 161.001(b)(1)(E) (emphasis added).

[28] *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.).

13

the right to consider Father's direct and indirect conduct to decide whether Father acted knowingly by exposing Paige and Liam to loss, to injury, or to circumstances jeopardizing their emotional or their physical health.[29]

The record in most cases must contain more than evidence showing a single act or omission by the parent to support a subsection E finding. More than a single act is required to be proven in termination cases because subsection E requires the Department to establish the parent engaged in a voluntary, deliberate, and conscious course of conduct.[30] In deciding the case, the trier of fact can consider the actions and the inactions of a parent when evaluating whether the parent's conduct affected his children's well-being.[31] And the court can rely on evidence of acts or omissions before and after the children, the subjects of the proceedings, were born.[32] Thus, "[w]hile endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or that the child actually suffer injury; rather, the specific danger to the child's well-being may be inferred from the parent's

---

[29] *See In re M.C.,* 917 S.W.2d 268, 269 (Tex. 1996); *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

[30] *J.T.G.*, 121 S.W.3d at 125.

[31] *In re S.M.,* 389 S.W.3d 483, 491-92 (Tex. App.—El Paso 2012, no pet.).

[32] *Id.*

14

misconduct alone."[33] Generally, evidence showing a parent engaged in conduct that created a life of uncertainty and instability for his children is the type of evidence that will support an inference that the parent's conduct endangered his children.[34]

Given the evidence in the record, we conclude it supports the trial court's subsection E finding. For example, the testimony, when viewed in the light that favors the verdict, shows that Father assaulted Mother two times. And, the trial court could have inferred that Father had a history of drug abuse that manifested in ways that endangered the children. For instance, Grandfather testified that Father attempted to pick up Paige and Liam at a time that Father was "high or drunk." When that happened, Grandfather said that Father left when Grandfather refused to turn over the children but then Father later returned, threatening to kill Grandfather because he was getting into what Father considered his own business. That incident ended when a neighbor, who saw what was going on, fired a shotgun in the air so that Father would leave. When Father left, he took Mother with him, but according to Grandfather, Father pushed his daughter out of the car and then drove away. While

---

[33] *In re F.E.N.*, 542 S.W.3d 752, 764 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

[34] *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

15

the children did not witness this conduct, they were nearby since they were in Grandfather's home when the events occurred. And events like this constitute conduct the court was entitled to consider in deciding whether Father had, on more than one occasion, created an environment that endangered the emotional environment of his children.[35]

The evidence showing Father's history with drugs and his knowledge of Mother's abuse of drugs and alcohol was also relevant to the trial court's inference that Father knowingly allowed his children to live in an environment that threatened their well-being. The testimony reveals how Father's and Mother's use of illegal substances affected both their abilities to provide Paige and Liam with a home free from dangers to their physical and emotional well-being.[36] When viewed in the light that favors the trial court's findings, the evidence allowed the trial court to conclude that Father and Mother engaged in using illegal drugs before and after Paige and Liam were born. Father acknowledged that Mother's drug problems affected her ability to parent, yet he did nothing to protect them from her when she was high. He

---

[35] *Tex. Dep't of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (revealing that danger can be inferred from a parent's misconduct if it exposes the child to injury); *In re R.W.*, 129 S.W.3d at 738.

[36] *See In re J.O.A.*, 283 S.W.3d at 345.

agreed Mother should not keep the children unless she "quit doing the drugs." This testimony allowed the trial court to infer that Father knew of the nature and extent of Mother's problems with illegal drugs. Nevertheless, he left the children alone with her for all but seven or eight days of their lives.

Father's criminal conduct represents even more conduct the trial court was entitled to consider in finding that Father was creating a lifetime of uncertainty in his children's lives. His incarceration for 600 days means Father is unavailable to give his children the emotional support they need.[37] And Father's conviction for possessing methamphetamine is not Father's first brush with the law. He has now twice been convicted of felonies, so he is exposed to an even greater punishment should he be charged with any future crimes. While a parent's imprisonment alone cannot show a continuing course of conduct that endangers the well-being of a parent's child, it is nevertheless evidence that is relevant when the conviction is not an isolated event and it is placed in a historical context based on the other testimony in the trial.[38]

---

[37] *See In re A.L.H.*, 515 S.W.3d 60, 91 (Tex. App.—Houston [14th Dist.] 2017, pet. denied.).

[38] *Boyd*, 727 S.W.2d at 533; *In re R.W.*, 129 S.W.3d at 743.

In his brief, Father argues the evidence shows that none of the altercations he had with Mother occurred while the children were present. He concludes that since the children did not witness the incidents, he did not expose them to danger. Father also addressed his criminal history in his brief, noting that his 1998 conviction for burglary occurred before Paige and Liam were born. As to his use of illegal drugs, Father's brief ignores Mother's testimony about his continued drug use and points us to Father's testimony as if that was the only evidence in the record that addressed his use of illegal drugs. But the factfinder in Father's trial was the trial court, not this Court, and it is not our role to substitute our own findings for findings that are reasonable from the evidence in the record.

Essentially, Father asks this Court to reweigh the evidence and replace the inferences the trial court drew with ones of our own. But here, the inferences the trial court drew from the evidence are subject to reasonable disagreement, so we may not overturn the trial court's verdict with our own.[39] While Father takes a divide and conquer approach, singling out various acts of misconduct and discussing them in isolation, the trial court was entitled to consider the testimony as a whole. Simply put, our job is to examine the record and decide if the evidence as a whole supports

---

[39] *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

the trial court's verdict. [40] In this case it does. As the factfinder, trial courts act as the *sole* judge of the credibility of the witnesses in a trial.[41] Thus, the court had the right to credit Mother's testimony about Father's use of drugs and discount Father's testimony he no longer uses drugs.

We conclude the evidence allowed the trial court to form a firm belief or conviction that Father engaged in conduct dangerous to Paige's and Liam's emotional well-being and that he knowingly placed Paige and Liam with a person who endangered them.[42] For these reasons explained above, we overrule Father's second issue.[43]

---

[40] *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

[41] *City of Keller*, 168 S.W.3d at 819.

[42] Tex. Fam. Code Ann. § 161.0001(b)(1)(E).

[43] Given our resolution of Father's second issue, we need not address Father's first and third issues. They argue the evidence does not support the trial court's findings terminating Father's rights to Paige and Liam under subsections D and F. But since the subsection E finding is supported by the evidence, we need not reach Father's fourth and fifth issues to resolve his appeal. *See* Tex. R. App. P. 47.1 (requiring the appellate court's opinion to address each issue necessary to resolving the appeal). Issues four and five challenge the sufficiency of the evidence supporting the trial court's best-interest findings.

C. Analysis—Best-Interest Finding

In issues four and five, Father argues the evidence failed to establish that terminating his rights to Paige and to Liam is in their best interests. In parental-rights termination cases, the Department must prove by clear and convincing evidence that terminating the parent's rights is in the best interest of the child.[44] "In determining whether the evidence is legally sufficient to support a best-interest finding, we consider the evidence that supports a deemed finding regarding best interest and the undisputed evidence, and ignore evidence a fact-finder could reasonably disbelieve."[45] Under the Family Code, a "rebuttable presumption [exists] that the appointment of the parents of a child as joint managing conservators" will serve the child's best interest.[46] That said, courts must also presume that a prompt and permanent placement of a child in a safe environment is also in the child's best interest.[47] When reviewing best-interest findings in appeals, we consider the nine

---

[44] Tex. Fam. Code Ann. § 161.001(b)(2); *see also In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012).

[45] *In re E.N.C.*, 384 S.W.3d at 807 (cleaned up).

[46] Tex. Fam. Code Ann. § 153.131(b); *see also In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (noting that a "strong presumption" exists favoring keeping a child with its parent).

[47] Tex. Fam. Code Ann. § 263.307(a).

non-exhaustive factors identified by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).[48]

We have already explained why the evidence allowed the trial court to find Father both engaged in conduct and placed Paige and Liam with a parent who engaged in conduct that endangered their well-being. Given Paige's and Liam's ages at the time of the trial, they were too young to testify about their desires. When the child is too young to testify in a parental-rights termination case, "the factfinder may

---

[48] In *Holley*, the Texas Supreme Court applied these factors in reviewing a best-interest finding:

> • the child's desires;
>
> • the child's emotional and physical needs, now and in the future;
>
> • the emotional and physical danger to the child, now and in the future;
>
> • the parenting abilities of the parties seeking custody;
>
> • the programs available to assist the parties seeking custody;
>
> • the plans for the child by the parties seeking custody;
>
> • the stability of the home or the proposed placement;
>
> • the parent's acts or omissions, which may indicate that the existing parent-child relationship is improper;
>
> • any excuse for the parent's acts or omissions.

consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent" when evaluating what is in each child's best interest.[49] The testimony in this case shows that Paige and Liam have bonded with their maternal grandparents but have no bond with their Father.

During the trial, Mother testified that the last time Father saw the children was in late-2017, when the Department removed the children from her care. Father admitted he spent just seven to eight days taking care of the children. And given that short period, Father acknowledged they haven't yet bonded with him.

Since the Department removed Paige and Liam from Mother's care, they have been living with their maternal grandparents. Grandfather and the maternal grandmother (Grandmother) testified in the trial. According to Grandmother, she and Grandfather are meeting Paige's and Liam's emotional and physical needs and can do so in the future. The evidence shows Grandmother and Grandfather are married. Paige and Liam have bonded with their grandparents, who are providing Paige and Liam with a stable home environment. During the trial, the court-appointed special advocate testified that Paige and Liam are more "settled," "open," and "playful" than they were before the proceedings began. A caseworker employed

---

[49] *In re L.G.R.,* 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

by the Department testified that Paige and Liam are "thriving" physically and socially in their placement.

In a best-interest analysis, the prompt, and permanent placement in a safe environment is of paramount consideration.[50] Here, the trial court heard evidence showing that Father had engaged in highly threatening and sometimes violent behavior, had a history of using illegal drugs, and convictions for two felony crimes. The evidence allowed the trial court to conclude that Father's behavior, drug use, and criminal history have prevented him from caring for Paige and Liam in an appropriate way. Finally, both the Department's caseworker and the children's court-appointed special advocate testified that terminating Father's parental rights would free Paige and Liam for adoption.

We conclude the evidence is legally and factually sufficient to support the trial court's best-interest findings.[51] For the reasons we have explained, we overrule issues four and five.

---

[50] *See* Tex. Fam. Code Ann. § 263.307(a).

[51] *See In re J.F.C.* 96 S.W.3d at 266 (explaining that the appellate court's analysis should determine whether the factfinder, under a clear and convincing standard of proof, could have formed a firm belief or conviction about the Department's claims).

Conclusion

Because the evidence supports the findings terminating Mother's and Father's rights and the court's best-interest findings, the judgment is affirmed.[52] While Mother's counsel moved to withdraw after filing an *Anders* brief on her behalf, we deny her motion because counsel's duty to Mother, who is indigent, extends throughout the appellate process unless the attorney shows her client has waived that right.[53] Should Mother advise counsel that she desires to appeal to the Texas Supreme Court, counsel may satisfy her obligation to Mother "by filing a petition for review that satisfies the standards for an *Anders* brief."[54]

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on November 5, 2019
Opinion Delivered December 19, 2019

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[52] *See* Tex. R. App. P. 47.1.

[53] *See* Tex. Fam. Code Ann. § 107.016(3)(B); *In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016).

[54] *In re P.M.*, 520 S.W.3d at 27-28.